Michael J. O'Connor, Esq.
O'Connor, O'Connor, Breese & First
*Attorneys for Chapter 7 Trustee*
20 Corporate Woods Blvd.
Albany, NY 12211

Crystal A. Doolity, Esq.
Maynard, O'Connor, Smith, Catalinotto
*Attorneys for Defendant*
6 Tower Place
Albany, NY 12203

   *In re: Erika A. Muse*
   Chapter 7 Case No. 07-10665

   *Michael J. O'Connor, Esq, as Chapter 7 Trustee, v. Flagstar Bank, FSB*
   Adv. No. 09-90029

**LETTER-DECISION AND ORDER**

The current matter before the court is a motion for summary judgment filed by the Chapter 7 Trustee, Michael J. O'Connor, Esq. ("Trustee" or "Plaintiff"), endeavoring to avoid the mortgage lien of Flagstar Bank, FSB ("Bank" or "Defendant").  The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(K), and 1334.

Based upon the record, including the joint stipulation of facts dated March 2, 2010, the court finds the following facts to be undisputed.  In 2004, Erika A. Muse ("Debtor") executed and delivered to Defendant a note and mortgage against her residence located at 28 Fullerton Street in Albany, New York (the "Fullerton Property").  On March 9, 2007, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  The Debtor's bankruptcy schedules were electronically filed simultaneously with her petition.  The purported security interest of the Bank is disclosed on Schedules A (Real Property) and D (Creditors Holding Secured Claims).

1

In or about April 2007, the Defendant became aware that its mortgage had not been recorded. On or about June 11, 2007, the Defendant commenced an action in New York State Supreme Court for Albany County pursuant to New York Real Property Action and Proceeding Law to determine its interest with respect to the Fullerton Property. The Debtor received her discharge on June 18, 2007, and her case was closed on June 21, 2007.

The Trustee learned of the unrecorded mortgage post-discharge and filed a motion to reopen the Debtor's bankruptcy case on July 19, 2007. An order granting the motion and reopening the case was entered on August 17, 2007. On the same day, the Bank recorded the suspect mortgage in the Albany County Clerk's Office. The Trustee commenced this adversary proceeding seeking to avoid the Bank's mortgage lien with the filing of the complaint on February 24, 2009. The Bank filed an answer on May 20, 2009.

A trial in this matter was scheduled for December 21, 2009, and adjourned in anticipation of settlement. When it became apparent that a settlement was not possible, the Trustee filed this motion for summary judgment. While the complaint sets forth three causes of action, the Trustee has moved for summary judgment only with respect to the first. With the first cause of action, the Trustee seeks to avoid the Bank's mortgage under his "strong arm" power contained in 11 U.S.C. § 544(a). The Trustee also seeks to preserve for the benefit of the estate any property recovered pursuant to 11 U.S.C. §§ 550, namely, the equity recovered in the Debtor's real estate should the mortgage be avoided.

The Trustee asserts that under 11 U.S.C. § 544(a)(3) he enjoys the status of a hypothetical bona fide purchaser ("BFP") as of the date of the Debtor's bankruptcy petition, and

Defendant's failure to record its mortgage pre-petition resulted in a lack of notice of the Bank's unrecorded mortgage lien.

The Defendant argues that the Trustee cannot be found to have BFP status because the infirm mortgage was disclosed in the Debtor's schedules. Thus, the Defendant concludes the Trustee was on constructive notice of the existence of its mortgage despite it not being recorded.

Summary judgment is warranted if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Bankr. P. 7056. "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *In re CIS Corp.*, 214 B.R. 108, 118 (Bankr.S.D.N.Y.1997) (citations omitted). The court determines that there are no genuine issues as to any material fact and, thus, this case is ripe for summary judgment.

Section 544 of the Code states, in relevant part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and     powers of, or may avoid any transfer of property of the debtor . . . that is voidable by—
> . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

11 U.S.C. § 544(a)(3).

Whether the Trustee had notice of the mortgage is determined by application of New York law. *See In re Mosello*, 193 B.R. 147, 151 (S.D.N.Y.1996) ("The definition and powers of

a 'bona fide purchaser' are governed by the substantive state law pertaining to the subject property").

> "In New York, a bona fide purchaser must have purchased the property 'in good faith without notice and for valuable consideration.'" [*In re Mosello*, 193 B.R. 147, 151 (S.D.N.Y. 1996)] (quoting *In re Hardway Restaurant, Inc.*, 31 B.R. 322 (Bankr. S.D.N.Y. 1983)). "Under New York law, such notice consists of actual notice and constructive notice of what may be revealed by (1) an examination of the record, (2) reasonable inquiry of those in actual possession, or (3) reasonable inquiry on the basis of all circumstances." *In re Bygaph, Inc*., 56 B.R. 596, 602 (Bankr. S.D.N.Y. 1986) (citations omitted).

*Reiber v. Option One Mtg. Corp*., 344 B.R. 28, 32 (W.D.N.Y. 2006). Although New York's substantive law provides that actual knowledge will operate to prevent one from attaining the status of a BFP, "'bankruptcy law renders a trustee's actual knowledge of a lien or defect irrelevant by virtue of the provisions of § 544(a)(3).'" *Standard Bank, PaSB v. O'Connor (In re O'Connor)*, 432 B.R. 175, 178 (Bankr. W.D. Pa. 2010) (quoting *In re Houston*, 409 B.R. 799, 806 (Bankr. D.S.C. 2009)).

The crucial question presented to the court in the case *sub judice* is whether the Trustee can be charged with inquiry or constructive notice of the Defendant's mortgage based upon the information contained in the Debtor's schedules filed contemporaneously with the petition. *In re Lauver*, 372 B.R. 751 (W.D.Pa. 2007), cited by the Defendant, answers that question in the affirmative. This court respectfully disagrees with the holding in *Lauver.* In reaching its decision, the *Lauver* court misconstrued the Ninth Circuit's legal analysis in *In re Professional Investment Properties of America v. Kent,* 955 F.2d 623 (9th Cir. 1992).

*Professional Investment Properties* was an involuntary Chapter 7 case involving a § 544(a)(3) attack on an unrecorded mortgage by the trustee. An involuntary petition requires petitioning creditors to identify their names and addresses, and the amount and nature of their

4

claims;[1] thus, the trustee in *Professional Investment Properties* was aware that the petitioning creditor's position was that it held a promissory note from the debtor allegedly secured by a deed of trust.  The trustee argued that even if inquiry notice could defeat his status as a BFP, the information contained in the petition was not sufficient to put him on notice, and any information he gained after the filing was not relevant. The court noted in a footnote that the trustee was correct that the relevant period of time was "the instant the petition is filed" and, thus, the court indicated that it would "only discuss the ramifications of the petition itself." *Id.* at 628  n.3.  The Ninth Circuit concluded that

> The involuntary petition indicated the very people who instigated the bankruptcy proceedings held a deed of trust.  This petition should have raised the trustee's suspicions and compelled him to inquire further.  Since this was an involuntary petition, the trustee need only have contacted the [petitioning creditor] to determine their specific interest.  In fact, the trustee had a duty to inquire as to the nature of the [petitioning creditor's] claim once he was appointed.

*Prof'l Inv. Props. of Am. v. Kent,* 955 F.2d at 629.

In interpreting the Ninth Circuit's reasoning, the *Lauver* court concluded that:

> The outcome of the appeal in *Professional Investment* depended on the unarticulated premise that information provided *at the time of the commencement of the bankruptcy case* may place a bankruptcy trustee, who is not appointed until later and who does not review the petition until after his or her appointment, on inquiry notice of the interest of a creditor in property listed on the schedules and statement of financial affairs.
>
> We agree with this unexpressed principle.  Provided that they are filed *contemporaneously* with a voluntary petition, information in a debtor's schedules, statement of financial affairs and statement of intention may provide a trustee for purposes of  § 544(a)(3) with notice of the existence and nature of a creditor's claim "at the commencement of the case."

*In re Lauver*, 372 B.R. at 760.

---

[1] *See* Official Form 5 (Involuntary Petition).

*Professional Investment* is a very narrow decision based upon the inherent nature of an involuntary petition. The *Lauver* court erroneously extended that holding to a voluntary petition and its attendant schedules. It is a mystery where in the four corners of the *Professional Investment* decision the *Lauver* court found an "unarticulated premise" or "unexpressed principle" that links information contained on the face of an involuntary petition with contemporaneously filed schedules in a voluntary case.

The court agrees with the reasoning and decision of the Ninth Circuit in *Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073 (9th Cir. 2010), which emphasized the distinction between the information contained on an involuntary petition and the information set forth on bankruptcy schedules filed concurrently with a debtor's voluntary petition.

> The statute says that a chapter 7 bankruptcy is "commenced by the filing with the bankruptcy court of a petition," so the petition and only the petition commences the case, regardless of what else happens at the same time . . . the schedules "cannot be filed until there is a case in which to file them."
>
> . . . .
>
> As the Bankruptcy Appellate Panel correctly pointed out, the schedules must be filed "[i]n" a case, which exists only after the filing of a petition has "commenced" a case, so whatever the trustee may learn from the schedules and statement of financial affairs "came too late and is irrelevant" even though it was filed when the petition was filed. The petition and schedules are on different official forms.

*In re Deuel*, 594 F.3d at 1077 (citation omitted) (footnote omitted); *See In re Badagliacca*, 403 B.R. 288 (Bankr. W.D.N.Y. 2009) (citing *Deuel* with approval). Thus, even though the Debtor's schedules were filed simultaneously with her petition, they do not operate to provide the Trustee with the constructive notice needed to deprive him of his strong arm powers under § 544(a).

Based upon the foregoing, summary judgment is granted to the Trustee on his first cause of action, and the mortgage lien of the Bank against the Fullerton Property is avoided and preserved for the benefit of the estate.

It is SO ORDERED.

Dated: November 2, 2010                    /s/ Robert E. Littlefield, Jr.
Albany, New York

                                                      Hon. Robert E. Littlefield, Jr.
                                                      Chief United States Bankruptcy Judge